IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, | § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:18-CV-3368 |
| v. | § | JUDGE EWING WERLEIN, JR. |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

<u>Memorandum in Support of Bayou City Waterkeeper's Opposed Motion to Intervene as Plaintiff</u>

Table of Contents

Table of Contents……………………………………………………………………………ii

Table of Authorities…………………………………………………………………………iii

I.    Introduction & Summary of Argument ............................................................................ 2

II.   Background ....................................................................................................................... 3

III.  Argument .......................................................................................................................... 7

    A.  Bayou City Waterkeeper May Intervene as a Matter of Right under FRCP 24(a)(1) and 24(a)(2) ...........................................................................................................................7

        1.  Bayou City Waterkeeper May Intervene as a Matter of Right Under FRCP 24(a)(1) Based on the Clean Water Act's Citizen Participation Provision....... 7

        2.  Bayou City Waterkeeper Also May Intervene as a Matter of Right Under FRCP 24(a)(2) Based on its Interests in the Subject Matter of this Litigation............ 9

            i. Bayou City Waterkeeper's Motion to Intervene is Timely……………10

            ii. Bayou City Waterkeeper Has an Interest in the Subject Matter of this Action….…………………………………………………………………11

            iii. This Litigation May Impair Bayou City Waterkeeper's Ability to Protect its Interests in the Protection of Water Quality in the Lower Galveston Bay Watershed..…………………………………………………………………12

            iv. The Existing Parties Will Not Adequately Represent Bayou City Waterkeeper's Interests.…………………………………………………13

    B.  Alternatively, this Court Should Exercise its Broad Discretion to Allow Bayou City Waterkeeper to Permissively Intervene in this Action Under FRCP 24(b) .................16

IV.  Conclusion..................................................................................................................... 18

Appendix ................................................................................................................................. 19

<u>Table of Authorities</u>

<u>Cases</u>

*Diaz v. Southern Drilling Corp.*, 427 F. 2d 1118 (5th Cir. 1970) ................................................. 11

*Doe #1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) ............................................................. 14, 16

*Entergy Gulf States La. v. U.S. EPA*, 817 F.3d 198 (5th Cir. 2016) ..................................... passim

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1985) ........... 12, 14, 16

*Friends of the Earth v. Carey*, 535 F.2d 165 (2d Cir. 1976) ......................................................... 9

*Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ...................................................... 12

*Heaton v. Monogram Credit Card Bank*, 297 F.3d 416 (5th Cir. 2002) ................................. 14, 16

*In re Lease Oil Antitrust Litig.*, 570 F.3d 244 (5th Cir. 2009) ..................................................... 10

*Ohio v. Callaway*, 497 F.2d 1235 (6th Cir. 1974) ........................................................................ 8

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ........................................................................ 11

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ............................................... 12

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ........................................................ 11

*United States v. Ketchikan Pulp Co.*, 430 F. Supp. 83 (D. Alaska 1977) ...................................... 8

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1971) ............................................................. 14

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562 (5th Cir. 2016) .......... 10, 11

<u>Statutes, Rules, & Regulations</u>

33 U.S.C. § 1365 ................................................................................................. passim

40 C.F.R. § 123.27(d) (2009) ...................................................................................... 18

FRCP 24 ............................................................................................................ passim

Bayou City Waterkeeper offers this memorandum in support of its motion to intervene in this action under FRCP 24(a)(1) and the Clean Water Act's citizen participation provision, which allows "any citizen [to] intervene *as a matter of right*" in a governmental enforcement action like this one. 33 U.S.C. § 1365(b)(1)(B) (emphasis added).[1] This memorandum also supports Bayou City Waterkeeper's alternative requests to intervene as of right under FRCP 24(a)(2) and for permissive intervention under FRCP 24(b).

Through its intervention, Bayou City Waterkeeper will assert its specific interests in protecting the health of Houston's waterways, riparian areas, and micro-watersheds, which flow into and directly impact the health of the Lower Galveston Bay watershed. Bayou City Waterkeeper's intervention also will ensure that any settlement process adequately represents and protects these interests, which are distinctly and adversely affected by the City of Houston's pollution of these waters.

Bayou City Waterkeeper has conferred with counsel for the EPA, State, and City of Houston. The EPA and State do **not** oppose Bayou City Waterkeeper's intervention of right under the Clean Water Act's citizen participation provision, 33 U.S.C. § 1365(b)(1)(B), and FRCP 24(a)(1). The EPA and State oppose Bayou City Waterkeeper's request to intervene under FRCP 24(a)(2) and FRCP 24(b). In contrast, disregarding the Clean Water Act's unconditional grant to Bayou City Waterkeeper of a right to intervene, the City of Houston fully opposes intervention unless Bayou City Waterkeeper first dismisses its pending citizen suit and agrees not to contest the stay that this Court imposed on September 24, 2018—even though that order expressly

---

[1] Bayou City Waterkeeper submits its proposed intervention complaint with this filing as Exhibit 1. By seeking to intervene in this lawsuit, Bayou City Waterkeeper does not waive any arguments it may raise to oppose any motion to dismiss its pending citizen suit, Complaint, Bayou City Waterkeeper v. City of Houston, No. 4:18-CV-3369 (S.D. Tex. Sep. 21, 2018), ECF No. 1.

1

acknowledges that "any party, upon advance written notice to the parties and for good cause shown, may request… that the matter be returned to the active litigation docket."[2] (*See* Doc. 8, "Stay Order.") The Court should grant Bayou City Waterkeeper's Motion to Intervene.

## I.    Introduction & Summary of Argument

On July 23, 2018, Bayou City Waterkeeper served the City of Houston with a 60-day notice of intent to sue under the Clean Water Act. The notice identified more than 9,300 potential Clean Water Act violations, including unpermitted discharges of untreated sewage from the City's wastewater treatment and collection systems into and adjacent to waterways, riparian areas, and micro-watersheds around the Houston area, as well as other incidents of noncompliance, such as SSOs and unauthorized bypasses (collectively, "discharges and diversions'). Fifty-nine days later, the United States of America, through the Administrator of the U.S. Environmental Protection Agency ("EPA"), and the State of Texas filed this action against the City of Houston for an unstated number of unpermitted discharges and diversions from the City's wastewater treatment plants and collection systems. (*See* Doc. 1 at ¶¶ 50-61.)

The EPA and State did not notify Bayou City Waterkeeper of their lawsuit, and Bayou City Waterkeeper filed a citizen suit the next day. *See* Complaint, Bayou City Waterkeeper v. City of Houston, No. 4:18-CV-3369 (S.D. Tex. Sep. 21, 2018), ECF No. 1. With their lawsuit, the EPA and State asked the Court to impose a blanket stay on all proceedings and litigation activity and referenced Bayou City Waterkeeper's notice of intent to sue. (*See* Doc. 2 at 2.) On September 24, 2018, the Court granted this request and ordered a stay of unlimited duration. (Doc. 8.)

---

[2] As an intervenor, Bayou City Waterkeeper may ask the Court to reconsider the Stay Order. Though not directly relevant to Waterkeeper's motion to intervene, the EPA, State, and the City of Houston all have advised that they will oppose any such efforts.

Bayou City Waterkeeper seeks to intervene in the EPA and State's lawsuit to assert its specific interests in protecting the health of waterways, riparian areas, and micro-watersheds in the Houston area, which flow into and directly impact the health of the Lower Galveston Bay watershed; Bayou City Waterkeeper's intervention will ensure that any settlement process adequately represents and protects these interests, which are distinctly and adversely affected by the City's discharges and diversions of untreated wastewater. Bayou City Waterkeeper may intervene on several independent grounds:

- FRCP 24(a)(1), which on a timely motion *compels* intervention when a federal statute grants an unconditional right to intervene. Such a right exists here: The Clean Water Act expressly authorizes citizens like Bayou City Waterkeeper to "intervene as a matter of right" in governmental enforcement actions like this one. *See* 33 U.S.C. § 1365(b)(1)(B). (*See* § III-A-1 below.)

- FRCP 24(a)(2), which also compels intervention by right,  because (1) Bayou City Waterkeeper has filed a timely motion, (2) Bayou City Waterkeeper has an interest in this litigation, as evidenced by its investigation of the City of Houston's permit violations culminating in a notice of intent to sue and citizen suit, (3) this litigation may impair or impede Bayou City Waterkeeper's interests, and (4) the existing parties do not adequately represent Bayou City Waterkeeper's interests. *See Entergy Gulf States La. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citing *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)). (*See* § III-A-2 below.)

- FRCP 24(b), which allows permissive intervention, because Bayou City Waterkeeper "has a claim or defense that shares with [this] action a common question of law or fact." (*See* § III-B below.)

For any of these bases standing alone, the Court should allow Bayou City Waterkeeper to intervene in this lawsuit.

## II.    Background

For years, the City of Houston has discharged untreated sewage from its wastewater treatment and collection systems into and adjacent to waterways, riparian areas, and micro-watersheds around the Houston area. The State of Texas regulates the City's wastewater treatment

3

and collection systems through the Texas Pollutant Discharge Elimination System ("TPDES") program, by which the State has assumed federal regulatory authority over the discharge of pollutants under the Clean Water Act. Importantly, no TPDES permit issued to the City authorizes it to discharge untreated sewage into local waterways or at any location other than a designated outfall. Each discharge—numbering in the thousands over several years—violates both the terms of the City's TPDES permits and the Clean Water Act.

According to the EPA and State's complaint, the City's legal violations stretch back to at least 2005. (Doc. 1 at ¶¶ 50-61.) The EPA and State's complaint alleges that these violations were reported to the Texas Commission on Environmental Quality ("TCEQ") "on numerous occasions," but does not identify any efforts on the part of the EPA or State to remedy the problem. (Doc. 1 at ¶ 47.)

Bayou City Waterkeeper's investigation shows that since 2005, only the State has taken any formal corrective action of significance. In 2005, the TCEQ and the City entered a Compliance Agreement and an Agreed Order to address some of the City's longstanding wastewater problems. Exhibit 2 (TCEQ Compliance Agreement) and Exhibit 3 (TCEQ Agreed Order) (collectively, "CA/AO"). Under the CA/AO, the City reportedly upgraded, cleaned, and renewed some of its sewer pipes and infrastructure and spent $755 million before completing all work in June 2016. *See* Exhibit 4 (Abner Fletcher, "How is the City Addressing Thousands of Sewage Overflows?," Houston Matters, Aug. 16, 2018 (reproducing City's press release that documents this information)). These efforts, however, did not reduce the number of unpermitted discharges and diversions reported by the City of Houston to the State. *See* Attachment to Exhibit 1 (reflecting no decrease in discharges and diversions after the City's completion of work under the 2005 agreements).

Bayou City Waterkeeper is a 501(c)(3), membership-based non-profit organization located in Houston, Texas. Declaration of Jordan Macha ("Macha Decl.") at ¶ 2. As part of its mission, Bayou City Waterkeeper works to protect and restore water quality across the Lower Galveston Bay watershed by identifying and targeting sources of pollution within area waterways, riparian areas, and micro-watersheds. *Id.* Bayou City Waterkeeper's members include at least 300 residents of the City of Houston. *Id.* at ¶ 3. Bayou City Waterkeeper's members, including those who reside in Houston, engage in outdoor recreation, such as canoeing, hiking, walking, fishing, birdwatching, picnicking, and photography, and other recreational, aesthetic, educational, environmental, scientific, and vocational activities of interest near and in the waterways, areas, and micro-watersheds comprising the Lower Galveston Bay watershed in the Houston area. *Id.*

By regularly and repeatedly discharging untreated wastewater into and near area waterways, riparian areas, and micro-watersheds, the City has diminished Bayou City Waterkeeper members' ability to use and enjoy Houston-area waters for a variety of activities. *Id.* at ¶ 4. In an effort to resolve this problem Bayou City Waterkeeper invested resources in investigating pollution from the City of Houston's wastewater treatment and collection systems. *Id.* at ¶ 5.

Based on the City of Houston's own reports of its legal violations submitted to the TCEQ through the TPDES program over a five-year period,[3] Bayou City Waterkeeper identified a pattern of consistent permit violations by the City across Houston as a whole. *Id.* Given the City's, EPA's, and State's apparent failure to meaningfully resolve the City's problem, on July 23, 2018, Bayou

---

[3] As alleged in Bayou City Waterkeeper's proposed intervention complaint, *see* Exhibit 1, each of the City's TPDES permits require that the City operate and maintain its wastewater treatment facilities and all of its systems of collection, treatment, and disposal to prevent unauthorized discharges of untreated wastewater. The City's TPDES permits require the City to self-report any unauthorized discharges and any noncompliance that may endanger human health or safety, or the environment. By complying with the self-reporting requirement, however, the City does not evade the Clean Water Act. Rather, each noncompliance represents an independent, potential violation of the Clean Water Act by the City of Houston.

5

City Waterkeeper served the City of Houston with a 60-day notice of its intent to sue under the Clean Water Act; the notice identifies more than 9,300 discharges and diversions of untreated wastewater from the City's wastewater treatment and collections systems into and adjacent to area waters, or otherwise not in compliance with the City's TPDES permits, over a five-year period. *See* Attachment to Exhibit 1. Bayou City Waterkeeper sent a copy of this notice to the EPA and the State. *See id.* at 8.

Fifty-nine days after Bayou City Waterkeeper sent its notice, on September 20, 2018, the EPA and the State of Texas filed a lawsuit against the City of Houston. (Doc. 1.) The EPA and State's lawsuit alleges that the City has been violating the Clean Water Act since at least August 2005 (Doc. 1 at ¶¶ 50-61), and, in their motion to stay proceedings filed concurrently with the complaint, the EPA and State acknowledge Bayou City Waterkeeper's notice of intent to sue. (Doc. 2 at 2.) The EPA and State give no reason for failing to enforce the Clean Water Act against the City of Houston since 2005, apart from vaguely explaining that they "have been engaged in settlement discussions for several years in an effort to address alleged violations of the CWA and the Texas Water Code with respect to Houston's sewer system."[4] (Doc. 2 at 2.)

The EPA and State did not notify Bayou City Waterkeeper of their complaint, and on September 21, 2018, Bayou City Waterkeeper filed suit against the City of Houston based on the legal violations identified in its notice of intent to sue. *See* Complaint, Bayou City Waterkeeper v. City of Houston, No. 4:18-CV-3369 (S.D. Tex. Sep. 21, 2018), ECF No. 1.

To protect its and its members' interests in the waters and areas that the Lower Galveston Bay watershed comprises, Bayou City Waterkeeper seeks to intervene in this action under FRCP

---

[4] With their lawsuit, the EPA and State filed a motion to stay proceedings for a minimum of 90 days, which seeks to limit the Court's involvement to "regular status updates… at least once every 45 days." (Doc. 2 at 3.) On September 24, the Court granted the EPA and State's requested stay and ordered a stay of indefinite duration (Doc. 8).

24 and the Clean Water Act, 33 U.S.C. § 1365. The EPA and State do ***not*** oppose Bayou City Waterkeeper's requested intervention of right pursuant to the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(b)(1)(B), and FRCP 24(a)(1). The EPA and State only oppose intervention under FRCP 24(a)(2) and 24(b). Defendant City of Houston opposes Bayou City Waterkeeper's request to intervene based on 33 U.S.C. §1365(b)(1)(B) unless Waterkeeper first dismisses its citizen suit (Complaint, Bayou City Waterkeeper v. City of Houston, No. 4:18-CV-3369 (S.D. Tex. Sep. 21, 2018), ECF No. 1) and agrees not to contest the Stay Order; the City also opposes intervention on any other ground. Through these objections, the EPA, State, and City collectively demonstrate their intent to shortchange the Clean Water Act's public participation provisions by denying Bayou City Waterkeeper its right to bring its own enforcement action or otherwise ensure diligent prosecution by the EPA or State. The Court should reject these efforts and allow Bayou City Waterkeeper to intervene.

### III.   Argument

A. <u>Bayou City Waterkeeper May Intervene as a Matter of Right under FRCP 24(a)(1) and 24(a)(2)</u>

1. <u>Bayou City Waterkeeper May Intervene as a Matter of Right Under FRCP 24(a)(1) Based on the Clean Water Act's Citizen Participation Provision</u>

The Clean Water Act irrefutably grants citizens like Bayou City Waterkeeper a right to intervene in this action. *See* 33 U.S.C. § 1365(b)(1)(B) ("[A]ny citizen may intervene as a matter of right."). Indeed, the EPA and State do not oppose intervention on this ground; only the City— which has not yet appeared in this action—opposes intervention under this provision unless Bayou City Waterkeeper first agrees to dismiss its citizen suit and not to ask this Court to reconsider its Stay Order. Neither the Clean Water Act nor FRCP 24(a)(1) requires the Court to impose such conditions on Bayou City Waterkeeper's intervention.

Instead, FRCP 24(a)(1) states: "On timely motion, the court must permit anyone to intervene who... is given an unconditional right to intervene by a federal statute." The Clean Water Act grants that right; it provides that where, as here, the EPA or State commences an enforcement action, "any citizen may intervene as a matter of right." 33 U.S.C. § 1365(b)(1)(B). Courts regularly conclude that this provision of the Clean Water Act "confers upon all applicants an **unconditional** right to intervene under Rule 24(a)(1)." *Ohio v. Callaway*, 497 F.2d 1235, 1242 (6th Cir. 1974) (emphasis added); *see also United States v. Ketchikan Pulp Co.*, 430 F. Supp. 83, 85 (D. Alaska 1977) (Section 1365 "allow[s] any affected citizen to intervene in a government action as a matter of right").

Bayou City Waterkeeper is a "citizen" to which the Clean Water Act grants an "unconditional" right to intervene in this action. *Callaway*, 497 F.2d at 1242; *see* 33 U.S.C. § 1365(b)(1)(B). Section 1365 defines "citizen" as any "person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). The Clean Water Act further defines a "person" as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

Bayou City Waterkeeper meets this standard; it has an interest in the protection of water quality in the Lower Galveston Bay watershed and, more specifically, in preventing unlawful discharges that affect water quality like those emanating from the City of Houston's wastewater treatment and collection systems. *See* Macha Decl. at ¶ 5. The City of Houston's repeated failure to comply with the Clean Water Act adversely affects Bayou City Waterkeeper's and its members interests. *See id.* at ¶¶ 3-5. Further, as the EPA and State concede, Bayou City Waterkeeper's notice of intent to sue the City of Houston preceded their own eleventh-hour lawsuit. (*See* Doc. 2 at 2.) This notice reflects Bayou City Waterkeeper's broader commitment to resolving the City's legal

violations; as part of this commitment, Bayou City Waterkeeper seeks to intervene now to ensure the EPA and State diligently prosecute the City's violations.

The City's opposition to and attempts to place conditions on Bayou City Waterkeeper's intervention ignores the unconditional nature of the right granted by the Clean Water Act under 33 U.S.C. § 1365(b)(1)(B)—and also ignores that provisions like 33 U.S.C. § 1365(g) "reflect [a] deliberate choice by Congress to widen citizen access to the courts...." *Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir. 1976) (discussing the Clean Air Act's citizen suit provision, which parallels the Clean Water Act's provision). This choice means that the Court should treat citizen groups like Bayou City Waterkeeper not as "nuisances or troublemakers," as the City urges, "but rather as welcomed participants in the vindication of environmental interests." *Id.*

By seeking to impose conditions on Bayou City Waterkeeper's intervention, the City not only flouts the policy underlying the Clean Water Act's citizen participation provision but also attempts to subject Bayou City Waterkeeper to requirements that contradict this Court's Stay Order, which states, "any party, upon advance written notice to the parties and for good cause shown, may request… that the matter be returned to the active litigation docket." (Doc. 8 at 2.)

The Court should reject the City's attempts to constrain Bayou City Waterkeeper's participation. Instead, as the EPA and State both agree is appropriate, the Court should apply the Clean Water Act's unconditional grant to citizens of the right to intervene under 33 U.S.C. § 1365(b)(1)(B) and allow Bayou City Waterkeeper to intervene in this lawsuit now under FRCP 24(a)(1).

      2.   <u>Bayou City Waterkeeper Also May Intervene as a Matter of Right Under FRCP 24(a)(2) Based on its Interests in the Subject Matter of this Litigation</u>

FRCP 24(a)(2) offers Bayou City Waterkeeper an independent basis to intervene:

On timely application, the court must permit anyone to intervene who... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In evaluating a motion to intervene, courts must consider the following factors: "(1) timeliness, (2) an interest [on the part of the intervenor] relating to the action, (3) [whether] the interest would be impaired or impeded by the case, and (4) [whether] the interest is not adequately represented by the parties." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009). In evaluating intervention under FRCP 24, courts should resolve all "doubts… in favor of the proposed intervenor," *Entergy Gulf States La.*, 817 F.3d at 203, and "allow intervention when no one would be hurt and the greater justice could be attained." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) .

Bayou City Waterkeeper satisfies each element under FRCP 24(a)(2):

### i. Bayou City Waterkeeper's Motion to Intervene is Timely

It cannot be disputed that Bayou City Waterkeeper's motion to intervene is timely because this case is in its earliest stages. The EPA and State filed their complaint less than two weeks ago on September 20, 2018 (*see* Doc. 1), and the City of Houston has not yet filed an answer. Because a stay is in place, no discovery has occurred, no dispositive motions have been filed, and the parties have offered no clear timeline as to when they plan to finalize a draft consent decree. (*See* Doc. 2 at 2 (referencing the need for a stay to accommodate years-old negotiations without committing to a timeline for completing those negotiations).) Further, all parties have been on notice of Bayou City Waterkeeper's stake in this litigation because they each received Bayou City Waterkeeper's

July 23, 2018 notice of intent to sue before this lawsuit was filed. (*See id.* (acknowledging Bayou City Waterkeeper's notice of intent to sue)).

Courts have concluded other intervenors' motions were timely when they were filed at similar or later stages in the litigation. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) (allowing intervention where movants discharged their duty to act quickly by filing their motion less than one month after district court entered a consent order); *Wal-Mart Stores*, 834 F.3d at 565–66 ("Because the Association sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the Association's motion was timely.").  The timing of Bayou City Waterkeeper's motion does not pose any threat of prejudice at this stage of the proceedings and favors Bayou City Waterkeeper's intervention.

> ii.  Bayou City Waterkeeper Has an Interest in the Subject Matter of this Action

It also cannot be disputed that Bayou City Waterkeeper has an interest warranting intervention in this litigation. To have "an interest relating to the property or transaction that is the subject of the action" and thus warrants intervention under FRCP 24(a)(2), a party must show an interest that is "direct, substantial, [and] legally protectable." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005).  FRCP 24(a)(2) sets a low bar for intervention: "All that is required… is an interest in the property or other rights that are at issue, provided the other elements of intervention are present." *Diaz v. Southern Drilling Corp.*, 427 F. 2d 1118, 1124 (5th Cir. 1970).

Bayou City Waterkeeper has interests "relating to the property or transaction that is the subject of the action" needed to support intervention under FRCP 24(a)(2). As part of its mission, Bayou City Waterkeeper works to protect and restore local water quality across the Lower Galveston Bay watershed by identifying and targeting sources of pollution within the area's

11

waterways, riparian areas, and micro-watersheds, including those in Houston. Macha Decl. at ¶ 2. Bayou City Waterkeeper's members rely on Bayou City Waterkeeper to protect their recreational, aesthetic, educational, environmental, scientific, and vocational interests within the Lower Galveston Bay watershed. *Id.* at ¶ 3. This general interest in local water quality motivated Bayou City Waterkeeper to commit significant resources to investigate the specific legal violations that are at the center of this lawsuit, prepare a notice of intent to sue, and file a citizen suit. *Id.* at ¶ 5.

These interests suffice to support intervention. *See, e.g.*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526–528 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" sufficed for intervention as a matter of right).

> iii. <u>This Litigation May Impair Bayou City Waterkeeper's Ability to Protect its Interests in the Protection of Water Quality in the Lower Galveston Bay Watershed</u>

To intervene as of right under FRCP 24(a)(2), an intervenor must be "so situated that the disposition of the action may as a practical matter impair or impede the intervenor's ability to protect that interest." FRCP 24(a)(2). In applying this requirement, the Court should "look to the 'practical consequences' of denying intervention...." *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). This inquiry "is not limited to consequences of a strictly legal nature." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (quoting *NRDC v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

The disposition of the EPA and State's lawsuit potentially will impair or impede Bayou City Waterkeeper's ability to protect its specific interests in ensuring the health of the Lower Galveston Bay watershed; it will determine to what extent—and by what dates—the City must prevent future unlawful discharges and diversions into Houston's waterways, riparian areas, and micro-watersheds. Bayou City Waterkeeper's concern over these issues already has prompted it to

12

invest its limited resources to investigate the City's legal violations; serve the City, EPA, and State with a notice of intent to sue; and file a citizen suit. Bayou City Waterkeeper is committed to taking all action possible to make sure the City's legal violations cease.

The EPA and State's failure to act "for several years" reinforces that this litigation may potentially impair or impede Bayou City Waterkeeper's interests in protecting water quality. (Doc. 2 at 2 (noting that the EPA, State, and City "have been engaged in settlement discussions for several years…").) Despite acknowledging these violations date back to 2005 (Doc. 1 at ¶¶ 50-61), the EPA and State do not identify in their complaint any action taken by either entity to remedy these violations. And despite knowing about the problem "for several years" (Doc. 2 at 2), the EPA and State only filed this lawsuit after receiving Bayou City Waterkeeper's notice of intent to sue in July of this year; the timing strongly suggests that Bayou City Waterkeeper's notice prompted the EPA and State's lawsuit. Although the EPA and State insist they have been engaged in a long-term "effort to address alleged violations of the CWA and the Texas Water Code with respect to Houston's sewer system," they do not reveal any information about these efforts or offer any timeline as to when they will finalize a draft consent decree and make it available for public review. (Doc. 2 at 2.).

Bayou City Waterkeeper's commitment to ending the City's unlawful discharges and diversions makes clear its stake as an intervenor. By allowing Bayou City Waterkeeper to intervene, this Court will ensure that any resolution of this matter, including settlement, adequately protects Bayou City Waterkeeper's and its members' interests; addresses both the short- and long-term impacts of the City of Houston's unlawful discharges and diversions on its members' interests; and injects any efforts to resolve this problem with much needed transparency, which

13

will benefit Bayou City Waterkeeper, as well as the general public, in a way that neither the EPA and State, nor the City currently propose.

      iv.  <u>The Existing Parties Will Not Adequately Represent Bayou City Waterkeeper's Interests</u>

FRCP 24(a)(2) imposes a "minimal" burden on a proposed intervenor to show that existing parties will not adequately represent its interests in a lawsuit. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1971); *see Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002) (emphasizing "[a]n applicant for intervention… has only a minimal burden as to inadequate representation[,]" and noting that a governmental entity's representation may be inadequate when their interest is broader than an intervenor's specific, narrow interest).

The Fifth Circuit has frequently recognized that governmental plaintiffs and defendants, like those here, cannot adequately represent private intervenors, like Bayou City Waterkeeper. *Entergy Gulf States La.*, 817 F.3d at 206 (allowing intervention because conservation groups' interests sufficiently diverged from EPA's); *Heaton*, 297 F.3d at 425 (finding inadequate representation by government agency because the government represents a broader interest than that of a private entity); *Doe #1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (same); *see also Forest Conservation Council*, 66 F.3d at 1498–99 (reasoning that government defendant could not be expected to make all the arguments of proposed intervenors).

This case law reinforces that neither the EPA nor the State will adequately represent Bayou City Waterkeeper's interests in this litigation for the purposes of FRCP 24(a)(2). Federally, the current Administration has reduced funding for environmental enforcement nationwide and repeatedly expressed its intent to scale back the Clean Water Act's protections. *See, e.g.*, Exhibit 5 (US EPA, EPA's Budget and Spending (2018); US EPA, FY 2019 Budget (2018)) (showing that the EPA's proposed FY 2019 budget is $6.146 billion, nearly $2 billion less than its budget in

14

2017 and the lowest annual budget since 1991); Exhibit 6 (US EPA, "Supplemental Notice: Definition of 'Waters of the United States' - Recodification of Preexisting Rule," Jul. 12, 2018 (expressing intent to repeal Clean Water Rule)). In contrast, strong environmental enforcement is central to Bayou City Waterkeeper's mission of promoting water quality within the Lower Galveston Bay watershed, and Bayou City Waterkeeper has participated in comments to rulemaking in vigorous support of maintaining the Clean Water Act's existing protections. Macha Decl. at ¶ 6. *See generally Entergy Gulf States La.*, 817 F.3d at 206 (allowing intervention because conservation groups' interests sufficiently diverged from EPA's).

The State of Texas, moreover, already has taken action that fell short of resolving the specific legal violations at issue in this lawsuit. Despite entering the CA/AO with the City of Houston in 2005, the TCEQ required the City to complete work that did not result in any apparent reductions to its overall pattern of unlawful discharges and diversions. *See* Attachment to Exhibit 1 (showing that even after the City expended significant resources to upgrade its wastewater collection systems under the CA/AO with the State, the City's self-reported discharges and diversions continued at essentially the same rate as before). Indeed, the City's ongoing legal violations over the time period it was completing work under the 2005 CA/AO precipitated the Bayou City Waterkeeper investigation that eventually led to this lawsuit. *See* Macha Decl. at ¶ 5.

Further, even if Bayou City Waterkeeper and the EPA and State of Texas arguably share some general objectives regarding water quality and enforcement of environmental laws, that would not suffice to deny intervention now. The EPA and State are required to generally represent the interests of all U.S. and Texas citizens, respectively, and enforce a broad range of laws beyond those affecting water quality. In contrast, Bayou City Waterkeeper and its members more narrowly focus their interests on the impacts of pollution from the City's wastewater treatment and

collection facilities on water quality within the Lower Galveston Bay watershed. *See id.* at ¶ 2. These differences support Bayou City Waterkeeper's intervention. *See Heaton*, 297 F.3d at 425 (finding inadequate representation by government agency representing broader interest than that of a private entity); *Doe #1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (same); *Forest Conservation Council*, 66 F.3d at 1498–99 (reasoning that government defendant could not be expected to make all the arguments of proposed intervenors).

    B.   <u>Alternatively, this Court Should Exercise its Broad Discretion to Allow Bayou City Waterkeeper to Permissively Intervene in this Action Under FRCP 24(b)</u>

    Bayou City Waterkeeper alternatively asks this Court to allow it to permissively intervene under FRCP 24(b). FRCP 24(b)(1)(B) provides: "On timely motion, the court may permit anyone to intervene who… has a claim or defense that shares with the main action a common question of law or fact." In evaluating a request for permissive intervention under FRCP 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3).

    Bayou City Waterkeeper's claims have questions of law and fact in common with this litigation. Both its notice of intent to sue and its proposed intervention complaint identify more than 9,300 discharges and diversions from the City of Houston's wastewater treatment and collection systems. *See* Exhibit 1 and Attachment. The EPA and State's lawsuit broadly, but similarly, covers an unidentified number of unlawful discharges and diversions from the City of Houston's wastewater treatment facilities (Doc. 1 at ¶¶ 50-61), and in their motion for stay filed the same day as their complaint, the EPA and State reference Bayou City Waterkeeper's notice of intent to sue. (Doc. 2 at 2.) Further, Bayou City Waterkeeper's proposed intervention complaint states claims based on the City's unpermitted discharges and diversions of untreated wastewater and the City's failure to comply with the limits of their TPDES permits; the EPA and State's

complaint includes nearly identical claims. *Compare* Exhibit 1 at ¶¶ 57-76 with Doc. 1 at ¶¶ 62-82. These similarities leave no doubt that Bayou City Waterkeeper "has a claim or defense that shares with the [EPA and State's] main action a common question of law or fact." FRCP 24(b)(1)(B).

Further, Bayou City Waterkeeper's intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *See* FRCP 24(b)(3). Since receiving Bayou City Waterkeeper's July 23, 2018 notice of intent to sue, all parties in this litigation have been on notice of Bayou City Waterkeeper's interest in the subject matter of this litigation. This request for intervention comes less than two weeks after the EPA and State filed the lawsuit and before the City has filed an answer, any discovery has taken place, and any dispositive motions have been filed. Although the EPA and State have represented that they "have been engaged in settlement discussions for several years in an effort to address alleged violations of the CWA and the Texas Water Code with respect to Houston's sewer system," they offer no clear timeline on when a draft consent decree will be finalized and made available for public review. (*See* Doc. 2 at 2.) This Court's imposition of a stay on all proceedings reinforces that allowing Bayou City Waterkeeper to intervene now will not prejudice any parties. (Doc. 8.)

Equitable considerations also compel this Court to permit Bayou City Waterkeeper to intervene in this action. The Clean Water Act authorizes citizen suits against violators of the Act and allows any citizen to intervene as a matter of right in enforcement actions brought by a State or the EPA in federal court. *See* 33 U.S.C. § 1365(a)(1), (b)(l)(B); *see also* 33 U.S.C. § 1365(g) (defining "citizen" for the purposes of the citizen suit provision as "a person or persons having an interest which is or may be adversely affected."). The EPA's regulations further require states like Texas, which administers the TPDES program under the Clean Water Act, to provide for citizen

17

participation in the enforcement process by either allowing intervention as a matter of right or giving assurances that the enforcement agency will "[n]ot oppose intervention by any citizen…" 40 C.F.R. § 123.27(d) (2009).

If the Court does not conclude Bayou City Waterkeeper has the right to intervene under FRCP 24(a), it should grant Bayou City Waterkeeper's alternative request to permissively intervene under FRCP 24(b).

**IV.** <u>Conclusion</u>

Bayou City Waterkeeper respectfully requests that the Court grant its motion to intervene.

Date: October 3, 2018

> By: /s/ David Frederick
> David Frederick
> Attorney-in-charge
> Texas Bar No. 07412300
> Eric Allmon, of counsel
> Texas Bar No. 24031819
> Lauren Ice, of counsel
> Texas Bar No. 24092560
> Frederick, Perales, Allmon & Rockwell, P.C.
> 1206 San Antonio St.
> Austin, Texas 78701
> Tel: (512) 469-6000
> Fax: (512) 482-9346
> dof@lf-lawfirm.com
> eallmon@lf-lawfirm.com
> lauren@lf-lawfirm.com
> *Attorneys for Bayou City Waterkeeper*
>
> Kristen Schlemmer, of counsel
> Texas Bar No. 24075029
> S.D. Tex. Bar No. 2078411
> Bayou City Waterkeeper
> 2010 N. Loop West, Suite 275
> Houston, TX 77018
> Tel: (281) 901-0182
> kristen@bayoucitywaterkeeper.org
> *Attorney for Bayou City Waterkeeper*

# PROPOSED PLAINTIFF-INTERVENOR'S APPENDIX