IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> and ) <br> ) <br> STATE OF TEXAS, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CITY OF HOUSTON, TEXAS, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 4:18-cv-03368 <br> Judge EWING WERLEIN, JR. |

**JOINT REPORT ON THE PROGRESS
OF SETTLEMENT NEGOTIATIONS**

On September 20, 2018, Plaintiffs United States and the State of Texas filed a Complaint against the City of Houston, Texas, pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, and the Texas Water Code § 7.001 *et seq.* (ECF No. 1). Simultaneously with filing the Complaint, the United States filed an Unopposed Motion to Stay Proceedings to Allow the Parties to Complete Settlement Negotiations ("Stay Motion"). (ECF No. 2). Plaintiff State of Texas (the "State") and Defendant City of Houston ("City" or "Houston") supported the Stay Motion.

The Stay Motion advised the Court that the U.S. Department of Justice ("DOJ"), the U.S. Environmental Protection Agency ("EPA"), the Office of the Attorney General for the State of Texas, the Texas Commission on Environmental Quality ("TCEQ") and Houston (collectively, the "Parties") were engaged in ongoing settlement negotiations to address Houston's alleged

violations of the CWA and the Texas Water Code. The Stay Motion further advised the Court that prior to Hurricane Harvey, the Parties had made significant progress toward a final agreement; that negotiations were suspended for a period due to the devastating impact of Hurricane Harvey on the City and the need for Houston officials to focus attention on the health and safety of its citizens; and that the Parties recently resumed negotiations.

On September 24, 2018, the Court entered an Order Staying Litigation Pending Settlement Negotiations ("Stay Order"). (ECF No. 8). In its Stay Order the Court concluded that "granting said motion is in the best interest of judicial economy and will facilitate settlement." Stay Order at 1. The Stay Order directed the Parties to file a joint report on settlement progress every 45 days following entry of the Stay Order. *Id*. The Stay Order also stated "that any party, upon advance written notice to the parties and for good cause shown, may request a status conference or that the matter be returned to the active litigation docket." *Id*. at 2.

Since entry of the Stay Order, the Parties have continued to conduct good faith settlement negotiations. Pursuant to the Stay Order, the Parties submit this Joint Report to the Court on the progress of their settlement discussions.

## BACKGROUND

Plaintiffs filed their Complaint against Houston pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and provisions of the Texas Water Code. The Complaint alleges violations of the CWA, provisions of the Texas Water Code, and the terms and conditions of Texas Pollutant Discharge Elimination System ("TPDES") permits issued to Houston by the TCEQ. In general, the TPDES permits contain terms and conditions that Houston must comply with in the operation of the City's wastewater treatment plants ("WWTPs") and the wastewater collection systems associated with the WWTPs. Houston has

39 WWTPs that are currently subject to TPDES permits.  The Complaint alleges two categories of violations: (a) discharges of wastewater from WWTPs that exceed effluent limitations set forth in TPDES permits and (b) unauthorized discharges of untreated wastewater, namely sanitary sewer overflows ("SSOs"), from components of the collection systems associated with WWTPs.

The Parties' settlement negotiations have focused on both types of violations alleged in the Complaint.  Specifically, the Parties have focused on the types of effluent violations that have occurred, the causes of these effluent permit exceedances, and appropriate corrective measures to be implemented to address effluent exceedances at the WWTPs.  In addition, the Parties have focused on, among other issues, the causes of SSOs, where they are occurring, and measures to be implemented to eliminate SSOs.

## PROGRESS IN SETTLEMENT NEGOTIATIONS

**A.  Settlement Meetings and Conference Calls**

On November 1 and 2, 2018, the Parties conducted a face-to-face settlement meeting in Austin, Texas.  Sixteen representatives of the Parties participated in the meeting.  The participants included counsel representing each Party, technical and professional staff on behalf of EPA and Houston, and a consultant on behalf of the DOJ and EPA.  Prior to the meeting, the Parties exchanged proposed settlement language on a number of issues for discussion at the meeting.

**B.  Summary of the Issues the Parties Are Now Addressing**

Initially, counsel for the United States, the State and Houston wish to emphasize to the Court that they and others working with them are serving as negotiators for the respective Parties.  Any references in this Joint Report regarding reaching agreement or near agreement on

issues addressed herein and issues previously discussed mean the negotiating teams have agreed on positions they intend to recommend to the respective Parties' principals, subject to reviewing the terms of any proposed final agreement. Any final written agreement will be subject to the review and approval of the Mayor of Houston and the City's governing body and appropriate officials of the United States and the State authorized to approve final settlements. Accordingly, in this Section, "negotiating teams" is used when reference is made to any Party's current position on the issues discussed below.

Since resuming settlement negotiations in August 2018 and during the stay period to date, the Parties have focused on seven outstanding issues. Prior to the November meeting, the Parties exchanged information and proposed settlement language on most of these issues and focused on these issues at the meeting. As discussed below, the negotiating teams' recent discussions have focused on seven issues and the negotiating teams' progress on each issue is discussed.

1. SSO Response Plan. Houston proposed an SSO Response Plan, which includes, among other things, procedures Houston will follow in responding to SSOs. Plaintiffs provided Houston comments on the proposed Plan. The Plan was discussed at the recent meeting and Houston has agreed to incorporate Plaintiffs' comments into a final Plan. The negotiating teams have determined the substantive provisions of an acceptable SSO Response Plan and are currently preparing a final proposed Plan.

2. Wastewater Treatment Plants. The Parties have engaged in substantial discussions regarding effluent violations occurring at WWTPs. At the recent meeting, the negotiating teams agreed on a number of WWTPs where corrective measures will be implemented. Each of the identified WWTPs will be assessed to determine the root causes of past and ongoing effluent exceedances; some assessments have already been completed. Based on the assessments, Houston will

perform repair, replacement and improvement projects to address the causes of effluent exceedances that have occurred and/or are occurring at the identified WWTPs. For those WWTPs for which an assessment has already been completed and projects to be performed have been identified, Plaintiffs have reviewed the completed assessments and proposed projects and have provided and/or will provide Houston comments on the adequacy of the assessments and proposed projects. The negotiating teams have agreed on the principal terms for addressing this issue, subject to preparing and agreeing on final language that will be included in any settlement. Houston has proposed other corrective measures to be implemented with respect to other WWTPs; this matter will be addressed in the next Joint Report.

3.      Early Action Projects. During the course of negotiations, the negotiating teams have discussed corrective measures (referred to as "Early Action Projects") that Houston would agree to implement on a short schedule to address SSOs and effluent violations. The negotiating teams have reached agreement on these Early Action Projects.

4.      Condition Assessment. Houston's "Wastewater Collection and Transmission System," or WCTS, consists of thousands of miles of force mains and gravity sewer lines, hundreds of lift stations, and other components. Some SSOs occur due to deficiencies in these components. The negotiating teams have discussed and are nearing agreement on the scope of an assessment Houston will undertake to evaluate the condition of the components of its WCTS and on implementation of a repair and rehabilitation program to address deficient components.

5.      Wet Weather Facilities. Houston operates three Wet Weather Facilities ("WWFs"). Each WWF is associated with a specific WWTP and is subject to a TPDES permit. During heavy rain events, excess wastewater flow from the sewer collection system may be routed to a WWF that can provide storage of these flows. If wastewater flow exceeds the storage capacity

of the WWF, the excess volume of wastewater in the WWF is directed to an outfall and released to a designated water body.  Before being discharged, the excess wastewater flows in the WWFs receive primary treatment and disinfection.  The negotiating teams have agreed to eliminate discharges from one of the WWFs.  For the remaining two WWFs, the negotiating teams have agreed that Houston will conduct a pilot project to determine whether certain treatment technologies can be used to ensure that future discharges meet applicable regulatory requirements.  The negotiating teams are still determining the details of this pilot project.

6.     Capacity Management Operation and Maintenance ("CMOM") Program.  In general, a CMOM is a preventive maintenance program designed to ensure that the components of a wastewater collection system are properly operated and maintained.  Preventative maintenance activities may include, among other things, scheduled cleaning and inspections of sewer lines and other components to minimize SSOs, and a Fats, Oil, and Grease ("FOG") program.  FOG generators are normally food service and processing establishments, which are required by City ordinances to operate and maintain FOG interceptors designed to minimize FOG releases to sewer lines.  A number of Houston's past and ongoing SSOs have been and are caused by FOG.  The negotiating teams have reached an agreement on the principal provisions of a CMOM Program, which will include, among other things: (a) a cleaning program (routine removal of debris from certain sewer lines) and a preventative cleaning program (targeted cleaning of certain areas with a history of SSOs); (b) an enhanced FOG program, including an increase in the number of inspectors who conduct FOG inspections; (c) inspections of all collection system lift stations; and (d) implementation of a routine system of operation and maintenance performance evaluations of each WWTP.  The negotiating teams are currently finalizing proposed CMOM language for inclusion in a proposed settlement.

7. Advanced Sewer System Monitoring. In recent years, Houston has implemented a pilot program involving the installation of monitoring devices at 300 manholes. These devices are designed to remotely monitor wastewater levels and send a real-time alert to a manned station when specified wastewater levels are about to be exceeded. Based on the alert, workers are able to respond to the particular manhole, thereby improving responsiveness and operations with the goal of preventing SSOs from occurring. Houston has agreed to install at least 3,000 monitors across the WCTS and evaluate the effectiveness of the monitors over a period of years. The negotiating teams have reached agreement on this issue.

**C. Parties' Agreed Next Steps**

At the November meeting the Parties scheduled two telephone conference calls that will involve professional and technical staff representatives of the Parties to discuss information related to a significant issue that remains to be to be resolved. The first technical call is scheduled to occur on November 9, 2018 and the second call is scheduled to occur on November 29, 2018. In addition, the Parties scheduled their next face-to-face meeting to take place in Houston on December 13-14, 2018.

**D. Parties' Commitment to Continue and Complete Settlement Negotiations**

During the period of the Stay Order and before, the Parties have focused significant resources on settlement negotiations. The Parties agree that they have continued to make progress toward reaching a settlement that will resolve the allegations in Plaintiffs' Complaint. The Parties also agree that reaching a settlement is feasible, and they are committed to continue their efforts. Further, the Parties agree that during the next forty-five days, significant progress can be made toward agreement on the terms of a final settlement.

The United States, the State of Texas and Houston have conferred and agree to this Joint Report to the Court.

## CONCLUSION

The Parties will continue to keep the Court informed on the status of settlement negotiations pursuant to the Court's Stay Order.

Respectfully submitted,

FOR THE UNITED STATES

JEFFREY H. WOOD
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

 *s/ Nathaniel Douglas*
NATHANIEL DOUGLAS
Pennsylvania Bar No. 18217
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC, 20004
Ph: (202) 514-4628
Fax: (202) 616-6584
Nathaniel.Douglas@usdoj.gov
Attorney-in-charge for the United States

RYAN PATRICK
United States Attorney
Southern District of Texas

DANIEL D. HU
Assistant United States Attorney
Chief, Civil Division
SD Texas ID 7959
Texas bar number 10131415
1000 Louisiana, Suite 2300

                    Houston, TX 77002
                    Ph: (713) 567-9518
                    Daniel.Hu@usdoj.gov

OF COUNSEL:

MORGAN ROG
Attorney-Advisor
United States Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, NW
Washington, D.C.  20460


EFREN ORDÓÑEZ
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VI
1445 Ross Ave., Suite 1200
Dallas, TX  75202

                    FOR THE STATE OF TEXAS

                    KEN PAXTON
                    Attorney General of Texas

                    JEFFREY C. MATEER
                    First Assistant Attorney General

                    BRANTLEY STARR
                    Deputy First Assistant Attorney General

                    JAMES E. DAVIS
                    Deputy Attorney General for Civil Litigation

                    PRISCILLA M. HUBENAK
                    Chief, Environmental Protection Division

                    *s/ Phillip Ledbetter*
                    PHILLIP LEDBETTER
                    Assistant Attorney General
                    Attorney-in-Charge
                    State Bar No. 24041316
                    S.D. Bar No. 1401529
                    Phillip.Ledbetter@oag.texas.gov

MARY E. SMITH
Assistant Attorney General
State Bar No. 24041947
S.D. Bar No. 890693
Mary.Smith@oag.texas.gov

Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, TX 78711-2548
Telephone: 512-475-4152
Facsimile: 512-320-0911

ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2018, a copy of the foregoing Joint Report on the Progress of Settlement Negotiations was filed electronically with the Clerk of Court using the CM/ECF system.  I also certify that I caused this filing to be served by e-mail and U.S. Mail on the following counsel:

Tiffany S. Bingham
Senior Assistant City Attorney
900 Bagby, 4th Floor
Houston, Texas 77002
tiffany.bingham@houstontx.gov

Debra T. Baker
Baker · Wotring LLP
700 JPMorgan Chase Tower,
600 Travis Street
Houston, TX 77002
DBaker@BakerWotring.com

                                               *s/ Nathaniel Douglas*
                                               NATHANIEL DOUGLAS