IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>STATE OF TEXAS, )<br>)<br>Plaintiff, )<br>and )<br>)<br>BAYOU CITY WATERKEEPER, )<br>)<br>Plaintiff-Intervenor, )<br>)<br>v. )<br>)<br>CITY OF HOUSTON, TEXAS, )<br>)<br>Defendant. )<br>) | Civil Action No. 4:18-cv-03368<br>Judge EWING WERLEIN, JR. |

**SECOND JOINT REPORT ON THE PROGRESS
OF SETTLEMENT NEGOTIATIONS**

On September 20, 2018, Plaintiffs United States and the State of Texas filed a Complaint against the City of Houston, Texas, pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, and the Texas Water Code § 7.001 *et seq.* (ECF No. 1). Simultaneously with filing the Complaint, the United States filed an Unopposed Motion to Stay Proceedings to Allow the Parties to Complete Settlement Negotiations ("Stay Motion"). (ECF No. 2). Plaintiff State of Texas (the "State") and Defendant City of Houston ("City" or "Houston") supported the Stay Motion.

The Stay Motion advised the Court that the U.S. Department of Justice ("DOJ"), the U.S. Environmental Protection Agency ("EPA"), the Office of the Attorney General for the State of Texas, the Texas Commission on Environmental Quality ("TCEQ") and Houston (collectively, the "Parties") were engaged in ongoing settlement negotiations to address Houston's alleged violations of the CWA and the Texas Water Code.  The Stay Motion further advised the Court that, prior to Hurricane Harvey, the Parties had made significant progress toward a final agreement; that negotiations were suspended for a period due to the devastating impact of Hurricane Harvey on the City and the need for Houston officials to focus attention on the health and safety of its citizens; and that the Parties recently resumed negotiations.

On September 24, 2018, the Court entered an Order Staying Litigation Pending Settlement Negotiations ("Stay Order").  (ECF No. 8).  In its Stay Order the Court concluded that "granting said motion is in the best interest of judicial economy and will facilitate settlement."  Stay Order at 1.  The Stay Order directed the Parties to file a joint report on settlement progress every 45 days following entry of the Stay Order.  *Id*.  The Stay Order also stated "that any party, upon advance written notice to the parties and for good cause shown, may request a status conference or that the matter be returned to the active litigation docket."  *Id*. at 2.

Since entry of the Stay Order, the Parties have continued to conduct good faith settlement negotiations.  Pursuant to the Stay Order, on November 8, 2018, the Parties submitted an initial Joint Report ("First Joint Report") to the Court on the progress of their settlement discussions.  At this time, the City and the Plaintiffs United States and the State of Texas ("Plaintiffs") are submitting their Second Joint Report on the status of their settlement negotiations.

## BACKGROUND

The Plaintiffs filed their Complaint against Houston pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and provisions of the Texas Water Code. The Complaint alleges violations of the CWA, provisions of the Texas Water Code, and the terms and conditions of Texas Pollutant Discharge Elimination System ("TPDES") permits issued to Houston by the TCEQ. In general, the TPDES permits contain terms and conditions that Houston must comply with in the operation of the City's wastewater treatment plants ("WWTPs") and the wastewater collection systems associated with the WWTPs. Houston has 39 WWTPs that are currently subject to TPDES permits. The Complaint alleges two categories of violations: (a) discharges of wastewater from WWTPs that exceed effluent limitations set forth in TPDES permits and (b) unauthorized discharges of untreated wastewater, namely sanitary sewer overflows ("SSOs"), from components of the collection systems associated with WWTPs.

The Plaintiffs' and the City's ongoing settlement negotiations have focused on both types of violations alleged in the Complaint. Specifically, the Plaintiffs and City have focused on the types of effluent violations that have occurred, the causes of these effluent permit exceedances, and appropriate corrective measures to be implemented to address effluent exceedances at the WWTPs. In addition, the Plaintiffs and City have focused on, among other issues, the causes of SSOs, where they are occurring, and measures to be implemented to eliminate SSOs.

On November 19, 2018, the Court granted Bayou City Waterkeeper's Opposed Motion to Intervene as Plaintiff.

## PROGRESS IN SETTLEMENT NEGOTIATIONS

**A. Settlement Meetings and Conference Calls**

In the First Joint Report, filed on November 8, 2018, the Plaintiffs and City reported that they conducted a face-to-face settlement meeting on November 1 and 2, 2018, in Austin, Texas. The Plaintiffs and City also reported that sixteen of their representatives participated in the November meeting, and that those representatives included counsel, technical and professional staff on behalf of EPA and Houston, and an environmental consultant on behalf of the DOJ and EPA. Further, the Plaintiffs and City reported that prior to that meeting they exchanged proposed settlement language on a number of issues for discussion at the meeting.

The First Progress Report further advised the Court that the next steps would include two telephone conference calls on November 9 and November 29, 2018, involving technical staff representatives of the Plaintiffs and City, as well as an environmental consultant on behalf of DOJ and EPA, and another face-to-face meeting on December 13-14, 2018 in Houston, Texas. These three events occurred as scheduled. Both technical calls focused on exchanging information and attempting to reach agreement on Houston's performance of a capacity assessment of the Houston wastewater collection and transmission system ("WCTS"). The reason for a capacity assessment is discussed below in Section C. The Plaintiffs and City discussed a number of other potential settlement provisions, as discussed below, at the December 13-14 meeting. Fifteen of their representatives attended the meeting. In addition, two EPA representatives participated in most of the meeting by telephone, and two TCEQ representatives participated in a portion of the first day of the meeting by telephone.

B. **Negotiating Teams and Summary of Progress**

Initially, counsel for the United States, the State, and Houston wish to emphasize to the Court that they and others working with them are serving as negotiators for the respective Parties. Any references in this Second Joint Report to the Parties reaching agreement or near agreement on issues addressed herein and issues previously discussed mean the negotiating teams have agreed on positions they intend to recommend to the respective Parties' principals, subject to reviewing the terms of any proposed final agreement. Any final written agreement will be subject to the review and approval of the Mayor of Houston and the City's governing body and appropriate officials of the United States and the State authorized to approve final settlements. Accordingly, in this Section, "negotiating teams" is used when reference is made to any party's current or proposed position on the issues discussed below.

Since resuming settlement negotiations in August 2018 and during the stay period to date, the Plaintiffs and City have focused their discussions on compliance measures or injunctive relief to be implemented to address effluent exceedances related to the City's WWTPs and SSOs related to the WCTS. The Plaintiffs and City have worked to develop a comprehensive compliance plan or injunctive relief package, which will include the measures and relief addressed below. Subject to the Parties' ongoing discussions and required approvals, the negotiating teams have reached agreement or near agreement on all major provisions of a proposed comprehensive compliance plan or injunctive relief package, as discussed below.

C. **Proposed Compliance Measures and Injunctive Relief Not Addressed in the First Joint Report**

1.    Capacity Assessment. The First Joint Report did not address Capacity Assessment. For the Court's information, during rainfall events, the City of Houston experiences SSOs, often large volume SSOs due to inflow and infiltration (I/I) of rainfall and groundwater sources into

the sewer collection system.  A Capacity Assessment will be performed to identify WCTS components that do not have adequate capacity to convey sewage and I/I during peak rainfall events.  When WCTS components do not have adequate capacity, a hydraulic bottleneck occurs causing the wastewater to back up and be discharged from manholes or other components.  The Capacity Assessment is performed by evaluating the occurrences of SSOs during all wet weather events and through hydraulic modeling of the sewer system to predict what size storm would lead to sewer system flows that would exceed the existing sewer system's capacity.  The Plaintiffs and the City have agreed on a recommended approach to addressing capacity assessment and have identified 9 areas that will be addressed in the City's capacity program.  Furthermore, the City has agreed it will continue to evaluate the occurrence of wet weather SSOs and use monitoring technology to assist in locating additional areas where the sewer system's capacity may be deficient.

The Plaintiffs and City have agreed in principle on the elements of a proposed Capacity Assessment and the development and implementation of remedial measures based on deficiencies identified through Houston's assessment activities.

**D. Update on Compliance Measures and Injunctive Relief Provisions Discussed in the November 8 Progress Report**

1.  Condition Assessment.  The First Joint Report advised the Court that Houston's "Wastewater Collection and Transmission System," or WCTS consists of thousands of miles of force mains and gravity sewer lines, hundreds of lift stations, and other components.  The First Report also advised the Court that some SSOs occur due to deficiencies in these components.  Further, the First Joint Report advised the Court that the negotiating teams had discussed and were nearing agreement on the scope of a Condition Assessment that Houston would undertake

to evaluate the condition of the components of its WCTS and then develop a program for repair and rehabilitation of deficient components.

Prior to and during the December meeting, the negotiating teams continued their discussions on this issue and now report to the Court they have reached agreement with respect to recommended Condition Assessment language, subject to a few adjustments in the language.

2.      Wastewater Treatment Plants.  In the First Joint Report, the Court was advised that the negotiating teams had agreed on recommended corrective measures that Houston would implement to address effluent exceedances occurring at WWTPs, and that they were continuing to discuss certain additional issues related to the WWTPs.  Since filing the First Joint Report, the negotiating teams have continued to discuss the WWTPs and have exchanged draft language regarding WWTP corrective measures.  At the recent December meeting, the negotiating teams agreed on a recommended process for implementation of a routine system for operation and maintenance performance evaluations of each WWTP and also reached an agreement on recommended WWTP language to be included in a final settlement document.

3.      Capacity Management Operation and Maintenance ("CMOM") Program.  The First Joint Report advised the Court that a CMOM is a preventive maintenance program designed to ensure that the components of a wastewater collection system are properly operated and maintained, and that the negotiating teams have reached agreement on the principal provisions of a CMOM Program.

After filing the First Joint Report, the negotiating teams continued to discuss and exchange draft language to finalize agreement on a CMOM Program.  At the recent December meeting, the negotiating teams reached an agreement on a recommended CMOM Program, subject to revising the language on one component of the Program and resolving one other issue.

7

4.        Wet Weather Facilities ("WWFs"). The First Joint Report provided the Court a brief background statement on the three WWFs. Each WWF is associated with a specific WWTP and is subject to a Texas TPDES permit. During heavy rain events, excess wastewater flow from the sewer collection system may be routed to a WWF that can provide storage of these flows. If wastewater flow exceeds the storage capacity of the WWF, the excess volume of wastewater in the WWF is directed to an outfall and released to a designated water body. Before being discharged, the excess wastewater flows in the WWFs receive primary treatment and disinfection. The First Joint Report advised the Court that the negotiating teams have reached agreement for elimination of discharges from one of the WWFs by closing it as a WWF. For the remaining two WWFs, the negotiating teams agreed to recommend that Houston conduct a pilot project to determine whether certain treatment technologies can be used to ensure that future discharges meet applicable regulatory requirements. The negotiating teams advised the Court that they were still determining the details of this pilot project.

Since submission of the First Joint Report, EPA and TCEQ have coordinated on and discussed the WWFs. In addition, EPA prepared draft settlement language and provided that language to Houston shortly before the December meeting. The draft language was discussed at the December meeting. As of this time, the negotiating teams have substantially agreed on a recommended overall approach for resolving some issues related to the two WWFs and the pilot project, and they have identified specific issues which need to be further discussed and resolved. The negotiating teams will continue to discuss the WWFs and expect to reach an agreement for addressing the two WWFs in a final settlement.

E. **Compliance Measures and Injunctive Relief Reported Resolved in the November Joint Report**

The negotiating teams previously reported to the Court that they had reached agreement on the compliance measures and injunctive relief discussed below.

1. Early Action Projects. The negotiating teams discussed corrective measures (referred to as "Early Action Projects") that Houston would agree to implement on a short schedule to address SSOs and effluent violations. The negotiating teams have reached agreement on recommendations for Early Action Projects to be implemented.

2. Advanced Sewer System Monitoring. In recent years, Houston has implemented a pilot program involving the installation of monitoring devices at 300 manholes. These devices are designed to remotely monitor wastewater levels and send a real-time alert to a manned station when specified wastewater levels are about to be exceeded. Based on the alert, workers are able to respond to the particular manhole, thereby improving responsiveness and operations with the goal of preventing SSOs from occurring. The negotiating teams have agreed to recommend that Houston install at least 3,000 monitors across the WCTS and evaluate the effectiveness of the monitors over a period of years.

3. SSO Response Plan. The Houston negotiating team proposed an SSO Response Plan, which includes, among other things, procedures Houston would follow in responding to SSOs. The negotiating teams have reached agreement on the substantive provisions of an acceptable SSO Response Plan, and the Houston negotiating team is currently preparing a final proposed Plan.

F. **Supplemental Environmental Project ("SEP")**

This issue was not discussed in the First Joint Report. Pursuant to the U.S. EPA's Supplemental Environmental Project Policy 2015 Update ("2015 SEP Update"), a SEP "is an environmentally beneficial project or activity that is not required by law, but that a [settling]

9

defendant agrees to undertake as part of the settlement of an enforcement action." *See* 2015 SEP Update at 1 (https://www.epa.gov/sites/production/files/2015-04/documents/sepupdatedpolicy15.pdf).  Prior to the Stay Order, EPA and Houston tentatively negotiated a SEP that Houston would agree to implement as part of a final settlement.  In general, the SEP would involve the replacement of private laterals in certain neighborhoods that would be selected based on, among other criteria, the number of SSOs occurring in the neighborhoods during a specified period and the percentage of low income residents living in the neighborhoods.  The negotiating teams have substantially agreed on the SEP language to be included in the final settlement document and expect to finalize such language prior to or at their next face-to-face settlement meeting.

### G.  Agreed Next Steps

The negotiating teams have scheduled their next face-to-face meeting for January 14-15, 2019 to discuss and resolve the remaining issues related to the WWFs and any other unsolved issues related to compliance measures and injunctive relief provisions.

In addition, prior to issuance of the Stay Order, the Plaintiffs and City had engaged in extensive negotiations and reached preliminary final agreement on a number of non-injunctive relief provisions that would be included in a final settlement.  Such non-injunctive relief provisions include, among others, Reporting (annual reports on steps taken to implement injunctive relief provisions), Dispute Resolution, Civil Penalties, Stipulated Penalties, Modification of the settlement terms, etc.  Prior to and during the January meeting, the negotiating teams intend to review these previously agreed upon provisions to determine if any changes or revisions should be made.

**H.  Commitment to Continue and Complete Settlement Negotiations**

As stated in the First Joint Report, during the period of the Stay Order and before, the Plaintiffs and City have focused significant resources on settlement negotiations.  They agree that they have continued to make progress toward reaching a settlement that will resolve the allegations in Plaintiffs' Complaint.  The Plaintiffs and City also agree that reaching a settlement is feasible, and they are committed to continue their efforts.  Further, the Plaintiffs and City agree that during the next forty-five days or sooner, they expect to reach or come very close to reaching a proposed final settlement.

The United States, the State of Texas and Houston have conferred and agree to this Second Joint Report.

## **CONCLUSION**

The Plaintiffs and City will continue to keep the Court informed on the status of settlement negotiations pursuant to the Court's Stay Order.

Respectfully submitted,

FOR THE UNITED STATES

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

 *s/ Nathaniel Douglas*
NATHANIEL DOUGLAS
Pennsylvania Bar No. 18217
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611

        Washington, DC, 20004
        Ph: (202) 514-4628
        Fax: (202) 616-6584
        Nathaniel.Douglas@usdoj.gov
        Attorney-in-charge for the United States

        RYAN PATRICK
        United States Attorney
        Southern District of Texas

        DANIEL D. HU
        Assistant United States Attorney
        Chief, Civil Division
        SD Texas ID 7959
        Texas bar number 10131415
        1000 Louisiana, Suite 2300
        Houston, TX 77002
        Ph: (713) 567-9518
        Daniel.Hu@usdoj.gov

OF COUNSEL:

MORGAN ROG
Attorney-Advisor
United States Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, NW
Washington, D.C.  20460


EFREN ORDÓÑEZ
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VI
1445 Ross Ave., Suite 1200
Dallas, TX  75202

        FOR THE STATE OF TEXAS

        KEN PAXTON
        Attorney General of Texas

        JEFFREY C. MATEER
        First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

DARREN C. MCCARTY
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

 *s/ Phillip Ledbetter*
PHILLIP LEDBETTER
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24041316
S.D. Bar No. 1401529
Phillip.Ledbetter@oag.texas.gov

MARY E. SMITH
Assistant Attorney General
State Bar No. 24041947
S.D. Bar No. 890693
Mary.Smith@oag.texas.gov

Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, TX 78711-2548
Telephone: 512-475-4152
Facsimile: 512-320-0911

ATTORNEYS FOR THE STATE OF TEXAS

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2018, a copy of the foregoing Second Joint Report on the Progress of Settlement Negotiations was filed electronically with the Clerk of Court using the CM/ECF system. I also certify that I caused this filing to be served by e-mail and U.S. Mail on the following counsel:

Tiffany S. Bingham
Senior Assistant City Attorney
900 Bagby, 4th Floor
Houston, Texas 77002
tiffany.bingham@houstontx.gov

Debra T. Baker
Baker · Wotring LLP
700 JPMorgan Chase Tower,
600 Travis Street
Houston, TX 77002
DBaker@BakerWotring.com

          *s/ Nathaniel Douglas*
          NATHANIEL DOUGLAS